IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01787-CMA-MEH

COLORADO CITIZENS AGAINST TOXIC WASTE, INC., a Colorado non-profit corporation, and
ROCKY MOUNTAIN CLEAN AIR ACTION, a Colorado non-profit corporation,

    Plaintiffs,
v.

STEPHEN L. JOHNSON, in his official capacity as Administrator, Environmental Protection
Agency, a federal agency,

    Defendant.

# MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion to Stay Briefing to Allow Plaintiff to Conduct Limited Discovery Regarding Jurisdiction [filed November 12, 2008; docket #8]. The Motion has been referred to this Court for resolution [docket #10]. The matter is briefed, and oral argument would not materially assist the Court in its adjudication. For the following reasons, the Motion is **granted in part and denied in part**.

**I.    Facts[1]**

In 1970, Congress enacted section 112, 42 U.S.C. § 7412 of the Clean Air Act (CAA), which provided a specific statutory scheme for EPA to follow in developing regulations that would reduce emissions of "hazardous air pollutants" ("HAPs") into the ambient air. Congress significantly amended section 112 in the 1990 CAA Amendments. Under the pre-1990 version of section 112, EPA was directed to "publish a list" which included each HAP for which EPA intended to "establish an emission standard." 42 U.S.C. § 7412(b)(1)(A) (1970). EPA was then obligated to propose and finalize regulations containing national emissions standards for each HAP on the list. 42 U.S.C. §

---

[1] These are taken from Defendant's statement of facts in his Motion to Dismiss [docket #7].

7412(b)(1)(B) (1970). EPA listed radionuclides as a HAP under section 112 on December 27, 1979 (44 Fed. Reg. 76,738), and promulgated Subpart W on December 15, 1989. 40 C.F.R. §§ 61.250-61.256 (54 Fed. Reg. 51,654). Subpart W applies to "uranium mills" that "manage uranium byproduct materials during and following the processing of uranium ores." 40 C.F.R. § 61.250. Uranium extraction can produce large amounts of waste, and some mills heap this waste into piles. Subpart W seeks to control radon emissions from these "tailings piles" or "impoundments" by imposing specific requirements depending upon their date of construction. Impoundments constructed on or before December 15, 1989, qualify as "existing impoundments" and must meet a numerical emissions limit. *See* 40 C.F.R § 60.252(a). "New impoundments" built after December 15, 1989, must comply with one of two work practice standards. *See* 40 C.F.R. § 61.252(b). Both new and existing impoundments must also comply with all other applicable requirements in Subpart W. *See* 40 C.F.R. § 61.252(c); §§ 61.253-60.255.

On November 15, 1990, Congress enacted amendments to the CAA that substantially modified section 112. One of the new provisions in section 112 was a savings clause that provides that HAP regulations promulgated prior to the 1990 CAA Amendments are still effective, as explained in section 112(q)(1). 42 U.S.C. § 7412(q)(1) (1999). Specifically, the savings provision states that those standards "in effect" before the 1990 CAA Amendments "remain in force and effect after such date unless modified as provided in this section." *Id.* Section 112(q)(1) also provides that "[e]ach such standard shall be reviewed and, if appropriate, revised, to comply with the requirements of subsection (d) of this section within 10 years after the date of enactment of the Clean Air Act Amendments of 1990." *Id.* Subpart W was originally promulgated on December 15, 1989, and thus was "in effect" on the date of enactment of the 1990 CAA Amendments.

Contrary to the statutory mandate, the EPA has never reviewed the standards as required by

Section 112(q)(1), which it was required to do within 10 years of November 15, 1990. This lawsuit concerns this failure.[2] Plaintiffs seek to remedy the alleged ongoing failure of EPA to address agency regulations concerning emissions of the radioactive and deadly radon gas at new uranium mills, which Plaintiffs allege fail to meet modern standards set forth in the National Emission Standard for Hazardous Air Pollutants ("NESHAP") provision of the Clean Air Act ("CAA"). *See* 42 U.S.C. § 7412; *see also* ¶¶ Complaint at 25-38 (statutory background and effects of radon emissions). Plaintiffs seek to compel EPA to establish a schedule to review and update its NESHAP regulation of radon at uranium mills in a manner which addresses a "new wave" of uranium mill proposals.

In late 2006, upon hearing that a new mill was being proposed for Western Colorado, Plaintiff organizations began to utilize the regulatory programs which address such matters and discovered that EPA was relying on allegedly outdated and outmoded regulations. In an e-mail, Plaintiffs sought confirmation from the EPA that the regulations had not been reviewed. The government responded in a return e-mail from Loren Setlow, Geologist, U.S. Environmental Protection Agency, Office of Radiation and Indoor Air (6608J), Washington, D.C. as follows:

> We are not aware of any such review having been conducted for Subpart W. If performed, the review would have been published in the Federal Register. We suggest you search the Federal Register to obtain a copy of such a review if it was made.

In 2007, Plaintiffs provided EPA with the statutorily required Notice of Intent to Sue based on a search which ensued and confirmed that the standards had not been reviewed as required by law.

After the notice of intent to sue was filed, according to Plaintiffs, the parties spent nearly a year negotiating a timeframe for review and update of EPA's NESHAP regulations for radon emissions at the "new wave" of uranium mills. Plaintiffs assert that after they had submitted an

---

[2]The following facts are from Plaintiffs' Motion presently before the Court.

executed (by them) and proposed consent decree which had allegedly been agreed upon by the EPA during these year-long negotiations, did the United States suggest that this matter may be subject to the six-year statute of limitations under 28 U.S.C. § 2401(a). The government contends that Plaintiffs' claim arose the day after the 10-year review period was violated, November 16, 2000, and, thus, this lawsuit had to be filed on or before November 16, 2006, which it was not.

Plaintiffs allege that, before filing suit, they notified the government that (1) the statute of limitations defense did not apply; (2) if it did, the defense did not prevent litigation based on application to the facts of the present case; and (3) Plaintiffs intended to establish facts establishing equitable considerations that would toll the limitations period. The government has filed a Motion to Dismiss, alleging that Plaintiffs' violation of the time period in Section 2401(a) operates as a subject matter jurisdiction bar to this lawsuit. In the present Motion, Plaintiffs seek limited discovery to address the issues raised in the government's motion.

**II.    Analysis**

The Court agrees with Plaintiffs regarding the holding of *Sizova v. National Inst. of Standards and Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) and will permit limited discovery when necessary for a plaintiff to respond to a jurisdictional motion such as that presented here, especially in circumstances when the plaintiff would be prejudiced by denying discovery. However, the Court has scoured Plaintiffs' filings and simply cannot find a relevant factual dispute (save one, as noted below) on which discovery could be had.

Plaintiffs first state that the limited discovery would involve the accrual date of their cause of action. The parties appear to agree that the government violated the law by failing to review the standards as required by the 1990 amendments to the CAA. Therefore, it is not reasonably disputed that Plaintiffs could have filed a lawsuit commencing on November 16, 2000. Plaintiffs state that

they "seek an opportunity to discover and establish facts to demonstrate that Plaintiffs meet the 'accrual' standard set forth by Defendant." However, Plaintiffs allege no facts in the control of the government that might bear on this issue, and for which discovery is needed. With one exception, Plaintiffs allege no action by the government bearing on the accrual issue, other than the negotiations in which both parties were engaged and concerning which both parties should have equal knowledge. The only assertion by Plaintiffs that comes close to a discernible area of potential discovery is on pages 12-13 of their Reply, in which they state that misinformation by the government is a potentially relevant fact concerning their argument about when their cause of action accrued. Therefore, the Court will permit discovery on that point. It seems to the Court that any additional facts regarding accrual are already in the control of, and therefore accessible to, the Plaintiffs. Therefore, Plaintiffs have not provided the Court a basis for other discovery on this point.

Next, Plaintiffs state that they seek to "'establish a factual basis for tolling the statute' which will demonstrate facts on which to argue that equitable tolling is appropriate in the present case." Again, Plaintiffs do not make any allegation that any facts relevant to this inquiry would be within the control of the government and not already available to the Plaintiffs.

Last, Plaintiffs provide a glimpse into their proposed opposition to the Motion to Dismiss by stating that they intend "to fully argue that the Defendant's inaction is a 'continuing violation' with lingering effects and consequences and therefore the 'continuing violation' doctrine applies to the specific facts and circumstances of the present case." Plaintiffs do not allege that they need any discovery to support this theory. The closest they come is their statement in the Reply that a plaintiff "must provide evidence linking conduct occurring within the relevant statutory period to the original actionable conduct." However, in the context of this case, the violation, and the "conduct" relied upon to establish it, is *inaction* by the government, which the government does not

5

contest. Plaintiff neither identifies nor even insinuates any factual inquiry that they might make in this case if they were given the opportunity. Without some clarity in this regard, the Court does not believe it has the discretion to open up an indefinite discovery effort.

If the Court could find concrete areas of discovery needed by the Plaintiffs to counter the pending Motion to Dismiss, this Order would be different. Plaintiffs repeat several times that Defendant's motion involves areas of mixed law and facts, but Plaintiffs fail to disclose potential factual issues that necessitate discovery, prerequisite to their opposition to the Motion to Dismiss. The prevailing law requires Plaintiff to meet some standard of necessity beyond the mere, factually unsupported allegation that discovery is needed. In the absence of any such showing, the Court believes that the Motion must be denied, with one exception as noted above. And with regard to this narrow area of inquiry, one round of written discovery (and in their reply, Plaintiffs request only paper discovery) is sufficient. Plaintiffs should submit such discovery (maximum of 10 interrogatories, 10 requests for production, and 10 requests for admissions) on or before **January 30, 2009**. Responses shall be due pursuant to the federal rules. Briefing on the Motion to Dismiss should re-commence shortly thereafter.

In their joint motion to stay all pretrial proceedings [docket #9], the parties stated:

> If the Court grants Plaintiffs' motion (Doc. 8), the parties propose that they be allowed to meet and submit a report of the meeting pursuant to Rule 16(f) within thirty (30) days after entry of the Court's order on Plaintiffs' pending motion (Doc. 8), and that the parties submit a joint request for the Court to schedule a Rule 16(b) scheduling conference.

Based on the parties' representations in the joint motion to stay and in their papers concerning Plaintiffs' request for discovery, the Court does not believe that a full-blown scheduling order is appropriate. However, the Court will hear from the parties concerning this issue and concerning the remaining briefing on Defendant's Motion to Dismiss at the telephonic status/scheduling conference

to be held on Monday, **January 26, 2009, at 9:15 a.m.** [*see* docket #12]. The parties shall conference together and call Chambers at (303) 844-4507 at the designated time.

### III.   Conclusion

Accordingly, for the reasons stated above, it is hereby ORDERED that Plaintiffs' Motion to Stay Briefing to Allow Plaintiff to Conduct Limited Discovery Regarding Jurisdiction [<u>filed November 12, 2008; docket #8</u>] is **granted in part and denied in part**. Plaintiffs shall submit their discovery requests, consistent with this Court's order, to Defendant on or before **January 30, 2009**. The parties shall conference together and call Chambers for a telephonic status/scheduling conference to discuss the briefing schedule and any other remaining issues on Monday, **January 26, 2009, at 9:15 a.m.**

Dated at Denver, Colorado, this 20th day of January, 2009.

BY THE COURT:

 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge
